UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXIS LEVITAS, CAROLINE SOMERSTEIN, DALIA HOROWITZ, and ANNA JUBAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BABY BREZZA ENTERPRISES LLC and THE BETESH GROUP HOLDING CORPORATION,<br><br>Defendants. | No. 26-cv-________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Alexis Levitas, Caroline Somerstein, Dalia Horowitz, and Anna Jubas, on behalf of themselves and all others similarly situated (the "Class"), by their undersigned attorneys, for their complaint against Defendants Baby Brezza Enterprises LLC ("Baby Brezza" or the "Company") and The Betesh Group Holding Corporation ("The Betesh Group"), allege as follows:

## NATURE OF THE ACTION

1. Defendant Baby Brezza sells a machine called the "Formula Maker" that prepares warm bottles of baby formula "at the push of a button." While Baby Brezza promotes the Formula Maker as a major convenience for busy parents, its marketing emphasizes a more fundamental promise: the machine will dispense formula accurately. According to the Company, the Formula Maker "dispense[s] a perfectly mixed formula bottle every time" and is "more accurate" than hand scooping. For parents deciding whether to trust a machine to prepare their babies' formula bottles, that promise matters. But it was false, and Baby Brezza knew it.

2. For years, parents reported in lawsuits, consumer complaints, and one-star reviews that the Formula Maker suffered from a serious defect: even when used correctly, it could dispense too little formula powder, producing diluted bottles that pose serious health risks to infants. *Consumer Reports* documented the same problem after conducting an independent test in 2024, which revealed that the Formula Maker dispensed substantially less powdered formula than required for the proper formula-to-water ratio.

3. Rather than disclose that defect, Baby Brezza continued to market the Formula Maker as safe, accurate, and reliable, while blaming reported failures on consumer error. Had parents known the truth—that the Formula Maker was defective and often dispenses too little formula powder even when used correctly—they would never have purchased the product or placed it on their baby registries for others to purchase on their behalf.

4. Plaintiffs bring this putative class action to recover the economic losses caused by Baby Brezza's misrepresentations and concealment of the Formula Maker's defect.

## PARTIES

5. Plaintiff Alexis Levitas is, and at all relevant times was, a citizen of Illinois. On June 5, 2024, she purchased a Baby Brezza Formula Pro Advanced from Babylist, an online retailer, for $199.99. When she purchased the Formula Maker, Plaintiff Levitas was unaware that the product had a propensity to dispense inaccurate amounts of powdered formula and relied on Baby Brezza's representations concerning the product's accuracy. Had Defendants disclosed the defect, she would not have purchased the Formula Maker.

6. On October 11, 2025, Plaintiff Levitas received a second Formula Maker as a gift from her baby registry following the birth of her twins. When she placed the Formula Maker on her registry, Plaintiff Levitas was still unaware that the product had a propensity to dispense inaccurate amounts of powdered formula and relied on Baby Brezza's representations concerning

the product's accuracy. Had Defendants disclosed the defect, she would not have included the Formula Maker on her registry.

7. Plaintiff Levitas used both Formula Makers in accordance with the instructions provided by Baby Brezza. She did not discover that the second Formula Maker was defective until on or around April 13, 2026. After using the second Formula Maker for approximately three months, she became concerned because her babies remained hungry even after consuming enough Baby Brezza-prepared bottles that, if properly mixed, would have exceeded the recommended daily amount of formula. Once her pediatrician advised her to prepare bottles by hand, Plaintiff Levitas noticed differences in the color and consistency of the hand-prepared bottles and realized that the second Formula Maker had been dispensing too little formula powder, resulting in diluted bottles.

8. Plaintiff Caroline Somerstein is a citizen of New Jersey and was a citizen of New York at all times relevant to the allegations herein. On September 10, 2023, she received as a gift a Baby Brezza Formula Pro Mini, which she had selected and placed on her baby registry, and which was purchased for $229.99. When she included the Formula Maker on her registry, Plaintiff Somerstein was unaware that the product had a propensity to dispense inaccurate amounts of powdered formula and relied on Baby Brezza's representations concerning the product's accuracy. Had Defendants disclosed the defect, she would not have included the Formula Maker on her registry.

9. Plaintiff Somerstein used the Formula Maker in accordance with the instructions provided by Baby Brezza. She did not discover that the Formula Maker was defective until in or around December 2023. After using the Formula Maker for approximately three months, her baby lost a significant amount of weight and was hospitalized. Her pediatrician advised her to stop

using the Formula Maker and to prepare bottles by hand. After doing so, Plaintiff Somerstein noticed differences in the color and consistency of the hand-prepared bottles as compared with bottles prepared by the Formula Maker and concluded that the Formula Maker had been dispensing too little formula powder and producing diluted bottles.

10. Plaintiff Dalia Horowitz is, and at all relevant times was, a citizen of New York. On October 30, 2022, Plaintiff Horowitz purchased for personal use a Formula Pro Advanced Baby Formula Dispenser from Baby Brezza's website for $184.00. When she purchased the Formula Maker, Plaintiff Horowitz was unaware that the product had a propensity to dispense inaccurate amounts of powdered formula and relied on Baby Brezza's representations concerning the product's accuracy. Had Defendants disclosed the defect, she would not have purchased the Formula Maker.

11. On November 27, 2023, Plaintiff Horowitz purchased a second Formula Pro Advanced Baby Formula Dispenser, as a gift for a friend, from Baby Brezza's website for $179.40. When she purchased the second Formula Maker, Plaintiff Horowitz was still unaware that the product had a propensity to dispense inaccurate amounts of powdered formula and relied on Baby Brezza's representations concerning the product's accuracy. Had Defendants disclosed the defect, she would not have purchased the Formula Maker.

12. Plaintiff Horowitz used the Formula Maker she purchased for personal use in accordance with the instructions provided by Baby Brezza. She did not discover that the Formula Maker was defective until on or around June 4, 2025. After using the Formula Maker for six months with her second child, she became concerned that her baby was constantly hungry. Around that time, Plaintiff Horowitz learned through social media that other consumers had reported that the Formula Maker dispensed too little powdered formula. She then began preparing bottles by

hand and observed a noticeable difference in the consistency of the hand-prepared bottles compared with bottles made by the Formula Maker. Within approximately one week of discovering the defect, Plaintiff Horowitz notified Baby Brezza of the problem. She followed Baby Brezza's troubleshooting instructions, but the Formula Maker continued to dispense formula improperly.

13. Plaintiff Anna Jubas is, and at all relevant times was, a citizen of New York. In or around January 2023, she received as a gift a Baby Brezza Formula Pro Advanced, which she had selected and placed on her baby registry, and which was purchased for $229.99. When she included the Formula Maker on her registry, Plaintiff Jubas was unaware that the product had a propensity to dispense inaccurate amounts of powdered formula and relied on Baby Brezza's representations concerning the product's accuracy. Had Defendants disclosed the defect, she would not have included the Formula Maker on her registry.

14. Plaintiff Jubas used the Formula Maker in accordance with the instructions provided by Baby Brezza. She did not discover that the Formula Maker was defective until in or around May 2025. After using the Formula Maker for approximately three months with her second child, she became concerned because her baby was not gaining weight as expected and had fallen from approximately the 45th percentile for weight to approximately the 5th percentile. Her pediatrician advised her to stop using the Formula Maker and to prepare bottles by hand. After doing so, Plaintiff Jubas noticed differences in the color and consistency of the hand-prepared bottles compared with bottles prepared by the Formula Maker and concluded that the Formula Maker had been dispensing too little formula powder, resulting in diluted bottles.

15. Defendant Baby Brezza sells and markets the Formula Maker. The Company is organized as a limited liability company under the laws of New York and has its principal place

of business in Newark, New Jersey. Baby Brezza distributed, marketed, sold, and warranted the Formula Maker in this District and throughout the United States.

16. Defendant The Betesh Group Holding Corporation is a New York corporation that does business as "The Betesh Group" and has its principal place of business in Newark, New Jersey, at the same address as Baby Brezza. The Betesh Group's website has featured Baby Brezza and its products, including the Formula Pro, as part of The Betesh Group's business. Its marketing personnel have also publicly made representations concerning the Formula Maker's calibration, testing, accuracy, and performance.[1]

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed class consists of more than 100 members, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

18. This Court has general jurisdiction over Defendants because Baby Brezza Enterprises LLC is organized under the laws of New York and The Betesh Group Holding Corporation is incorporated under the laws of New York, and each is therefore at home in this State.

19. This Court has specific jurisdiction over Defendants because Defendants conducted business in New York and within this District related to the marketing, sale, and warranty of the Formula Maker within the State, including through retailers located in this State and through their interactive website, through which New York consumers could purchase the Formula Maker

[1] https://www.nytimes.com/2020/03/13/technology/baby-brezza-formula-pro-health-risks.html

directly. Defendants have sufficient minimum contacts with New York and purposefully availed themselves of the privilege of conducting business in New York.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including the selection, purchase, receipt, and use of the Formula Makers by Plaintiffs Somerstein, Horowitz, and Jubas, and by numerous other Class members residing in this District, and because Defendants transact business in this District.

## FACTUAL ALLEGATIONS

### I. The Formula Maker

21. The Formula Maker is an automated machine that mixes and dispenses powdered infant formula and water into a bottle. It is pictured below:




22. The Formula Maker models include, but are not necessarily limited to, the following: Formula Pro, Formula Pro Advanced, and Formula Pro Mini, each of which generally retails for approximately $200.

23. The Formula Maker includes two fillable compartments: a powdered formula container and a water tank.

24. To operate the Formula Maker, a user fills the powder container with powdered formula and the water tank with water. The user then selects the appropriate formula setting, desired temperature, and bottle size before pressing the "start" button, causing the machine to mix and dispense formula into a bottle.

## II. The Marketing

25. Baby Brezza markets the convenience of its Formula Maker, stating on its website that the product prepares "a warm formula bottle in seconds." Elsewhere, the website states: "A formula dispenser can make the task of feeding a whole lot easier for busy parents," because "[i]t takes away the tedious tasks of measuring, mixing, warming the bottle by automatically making a warm formula bottle at the touch of a button."

26. More importantly, Baby Brezza represents that the product dispenses formula accurately and consistently. According to its website, the Formula Maker's "automated technology mixes, warms and dispenses a ***perfectly mixed*** formula bottle ***every time*** – it's more accurate, consistent and hygienic than hand scooping formula and mixing by hand." Ex. 1.[2] (emphasis added).

27. Baby Brezza repeats this promise elsewhere on its website: "The Formula Pro Advanced delivers a ***perfectly mixed***, perfectly warm bottle in seconds—no scooping, no waiting, ***no second-guessing***. Just push a button to get more time for what matters most: holding, calming, bonding." Ex. 2 (emphasis added).

---

[2] Unless otherwise noted, each Exhibit cited herein reflects a statement made by Baby Brezza that is either identical to, or which does not differ materially from, the specific statements relied upon by Plaintiffs.

28. Baby Brezza posted similar representations on its social media pages. For example, in a December 27, 2022 Instagram post, Baby Brezza featured a customer review stating that "[e]ach bottle is mixed to the perfect consistency of formula." Ex. 3.

29. And a March 26, 2025 post stated: "Our Formula Pro Advanced automatically makes a warm formula bottle to the perfect consistency in 15 seconds. It's more accurate, consistent, hygienic, and faster than hand scooping." Ex. 4. The post included the hashtag "#feedwithconfidence." *Id.*

30. On its website, Baby Brezza assures consumers that "the Baby Brezza Formula Pro is completely safe to use," and that "Baby Brezza conducts a meticulous testing process to ensure the perfect bottle is made every time." Ex. 5. According to Baby Brezza, the Company "conduct[s] extensive testing to ensure [its products] are safe so you can be fully confident when you use them at home." *Id.*

## III. The Defect

31. The Formula Maker's essential function is to dispense the correct amount of powdered formula for the selected quantity of water. But even when properly set up, cleaned, and operated according to Baby Brezza's instructions, the Formula Maker often dispenses too little formula powder, producing bottles with unsafe formula-to-water ratios.

32. Formula bottles that are overly diluted pose serious and potentially life-threatening risks to infants because they may provide inadequate nutrition or otherwise harm infants' health.

33. Infants are particularly vulnerable to improperly concentrated formula because their digestive systems and kidneys are not sufficiently developed to safely process significant deviations from the required ratio.

34. Baby Brezza itself acknowledges on its website that "[p]reparing your baby's bottle with the correct formula-to-water ratio is essential for your baby's health."

35. The Formula Maker's tendency to dispense inaccurate amounts of powdered formula is not confined to isolated machines. Consumer complaints, reports from pediatricians, reports submitted to the Consumer Product Safety Commission ("CPSC"), and independent testing reflect a recurring pattern across the product line.

36. Testing conducted by *Consumer Reports* in 2024 found that the Baby Brezza Formula Maker dispensed materially inaccurate amounts of powdered formula, including substantially less powder than recommended.

37. In certain tests, the Formula Pro Advanced dispensed, on average, approximately 15% less powdered formula than expected, while the Formula Pro Advanced WiFi produced even larger deficiencies. These findings undermine Baby Brezza's claim that the Formula Maker dispenses the "perfect consistency" every time. They also belie the claim that the Formula Maker is more accurate than hand scooping. Baby Brezza's own website asserts that a "clinical study showed that 1/3 of all bottles made by hand were inaccurate by 10% or more." The inaccuracies produced by the Formula Maker in the *Consumer Reports* test are more severe than the statistics Baby Brezza selected to highlight the inaccuracies associated with hand scooping.

38. *Consumer Reports* concluded that the machines dispensed "inconsistent amounts of powdered formula" and "fall short" for consumers seeking confidence that their infants are receiving the correct amount of formula.

39. This defect renders the Formula Maker unfit for its ordinary and intended purpose of safely and accurately preparing bottles of infant formula.

## IV. Baby Brezza's Knowledge of the Defect

40. Baby Brezza knew or should have known of the defect from its own testing, product validation, and design review. Accurately measuring powdered formula is the Formula Maker's essential function, and any reasonably adequate testing process would have revealed its tendency

to dispense improper amounts. In any event, years of consumer complaints, reports to federal regulators, media coverage, and litigation gave Baby Brezza repeated notice of the dispensing problem.

41. Since at least 2016, consumers have reported to the CPSC that the Formula Maker dispenses inaccurate amounts of powdered formula. For example, on July 21, 2016, one consumer wrote: "We purchased the Baby Brezza Formula Pro for our baby about 4 months ago. We have been using the machine for 11 weeks following all instructions on use and care. The machine is very dangerously shorting the amount of formula that our daughter is to be receiving. . . . I fear for the parents that do not think to evaluate what is being dispensed."

42. On November 1, 2025, a consumer reported the same problem: "I was using the formula maker for my baby and followed all instructions on care and maintenance of the unit. My baby's weight was normal at birth however dropped dangerously low (<1%ile). I finally figured out that the machine was not dispensing the proper amount of formula, and baby had been getting watered down bottles instead of the correct ratio. . . ."

43. Consumers reported similar problems directly on Baby Brezza's website. On October 2, 2023, one consumer wrote: "my baby is sick due to consuming more water, i am really disappointed. I thought it'll be convenient but i notice that the formula it dispenses is really diluted." On September 17, 2024, another wrote: "The water:formula ratio is not correct. I followed the setup instructions perfectly and clean it regularly and the dispensed amount is too watery. Returning it." On October 9, 2025, another user wrote: "Creates watery bottles despite correct powder setting. Dispenses significantly less powder formula than it should. We have attempted all recommended trouble shooting techniques without success."

44. Numerous additional complaints on Baby Brezza's website and third-party platforms—including Amazon, Facebook, the Better Business Bureau, and parenting forums—reported inaccurate or inconsistent formula-to-water ratios. Baby Brezza responded to many of these complaints, further showing its awareness of recurring dispensing problems.

45. Litigation provided Baby Brezza with additional notice of the problem. In February 2020, a consumer filed suit alleging that the Formula Maker mixed "less formula than required," and that, as a result, "Plaintiff's child and other children have received poor nutrition while being fed formula that was mixed by the Formula Pro and Formula Pro Advanced, leading to associated complications and injuries." *Borgese v. Baby Brezza Enterprises LLC*, No. 20-cv-1180 (S.D.N.Y. Feb. 11, 2020), Dkt. 1.

46. Two additional lawsuits asserting similar allegations were filed in April 2020 and July 2021. *See Nahai v. Baby Brezza Enterprises LLC*, 20-cv-3712 (D.N.J. Apr. 6, 2020), Dkt. 1; *Buscha v. Baby Brezza Enterprises LLC*, 21-cv-653 (W.D. Tex. July 26, 2021), Dkt. 1. The lawsuits all settled or were voluntarily dismissed before reaching a ruling on the merits.

47. On March 13, 2020, in response to the first lawsuit filed, *The New York Times* published an article titled "Baby Brezza, a $200 Formula Maker, May Pose Health Risks to Infants." The article reported that "five pediatricians described to The New York Times how they had recently treated babies—whose parents had fed them Brezza-dispensed bottles—for failure to thrive, a condition caused by lack of nutrients." The marketing team lead for The Betesh Group responded to the reported problems on the Company's behalf, further confirming that Baby Brezza and The Betesh Group were aware of the defect.

48. Despite years of consumer complaints, reports to federal regulators, media coverage, and litigation, Baby Brezza did not recall the Formula Maker or warn purchasers that

the machine often dispenses too little powdered formula and produces improper formula-to-water ratios even when properly set up, cleaned, and operated according to Baby Brezza's instructions.

49. Instead, Baby Brezza repeatedly attributed reported dispensing inaccuracies to errors in setup, cleaning, maintenance, or formula-setting selection, as detailed below.

## V. Baby Brezza's Misrepresentations and Concealment

### A. Affirmative Misrepresentations

50. Despite repeated notice of dispensing inaccuracies, Baby Brezza continued to market and sell the Formula Maker without disclosing that it could produce bottles with improper formula-to-water ratios.

51. At the same time, Baby Brezza continued to assure consumers that the Formula Maker was safe and accurate. It represented that the Formula Maker was "completely safe to use," that it "conducts a meticulous testing process to ensure the perfect bottle is made every time," and that the machines deliver "the perfect consistency every time." Exs. 1–5.

52. These representations were material to Plaintiffs and Class Members because accurately measuring and dispensing infant formula is the Formula Maker's essential function. Plaintiffs and Class Members reasonably relied on those representations in deciding to purchase the machines or select them for purchase on their behalf.

53. Plaintiffs also reasonably relied on the fundamental representation inherent in the Formula Maker's nature and purpose: that it would properly perform its core function of dispensing the correct amount of baby formula.

### B. Concealment

54. Baby Brezza had a duty to disclose the defect because it possessed superior knowledge of material facts not reasonably available to consumers; because its representations

concerning the Formula Maker's safety and accuracy were misleading without disclosure of the defect; and because the defect posed serious risks to infant health and safety.

55. Baby Brezza did not disclose the defect to Plaintiffs or other Class Members at the point of sale. Nor did it later issue a recall, safety notice, or other corrective communication to purchasers.

56. Instead, Baby Brezza repeatedly attributed reports of watery or improperly concentrated formula to user error, improper cleaning or maintenance, and incorrect formula settings. It did so for years through statements to regulators and the press, content published on its website, and responses to consumer complaints.

57. In response to a CPSC complaint filed on July 21, 2016, Baby Brezza stated: "When set up, maintained and cleaned properly, Formula Pro mixes and dispenses formula appropriately and accurately."

58. When confronted with consumer complaints and media scrutiny in 2020, The Betesh Group's marketing team lead similarly told *The New York Times*: "We are confident our machine works properly and accurately when it's used right," and attributed reported problems to consumers "who don't use it properly, who get a bad outcome, who get a watery bottle because they're not cleaning, they're not using the right settings."

59. Baby Brezza gave substantially the same response to another CPSC complaint in February 2026. The complaint reported that the machine dispensed only one scoop of formula for three ounces of water instead of the required three scoops. Baby Brezza responded that dispensing inaccuracies can result from "common factors that can impact dispensing accuracy, such as powder levels falling below the minimum fill line, improper cleaning or assembly, or incorrect formula setting selection," and maintained that "when used and maintained according to instructions, the

product performs as intended." It did not acknowledge a defect, initiate a recall, or issue a safety warning.

60. Baby Brezza's troubleshooting materials on its website likewise attribute watery bottles to consumer conduct. In addressing reports of watery formula, Baby Brezza stated: "If you do not properly, or *consistently*, clean your Formula Pro, you may create a clogging issue that causes the dispensed Baby Brezza formula to look watery." Those explanations were misleading because the Formula Maker often dispenses inaccurate amounts of powdered formula and produces watery bottles even when properly set up, cleaned, and operated according to Baby Brezza's instructions.

61. By repeatedly blaming consumers for dispensing inaccuracies that could occur even when the Formula Maker was used correctly, Baby Brezza concealed the existence and scope of the defect and deprived Plaintiffs and Class Members of information material to their purchasing decisions.

## VI. Injuries

62. Plaintiffs and Class Members purchased the Formula Maker, or selected it for purchase on their behalf, primarily for personal, family, or household use.

63. Fundamental to any device meant to measure formula for feeding infants is that the device accurately measures formula for feeding infants. The Formula Maker did not sufficiently perform this core function. Had Plaintiffs known that the Formula Maker often dispenses inaccurate amounts of powdered formula even when used correctly, they would not have purchased the product or selected it for purchase on their behalf. Alternatively, purchasing Plaintiffs would have paid substantially less for the Formula Maker, while Plaintiffs who selected the Formula Maker for purchase on their behalf would have selected a different product or otherwise preserved the value of that gift opportunity.

64. Plaintiffs and Class Members therefore suffered economic injury when the Formula Maker was purchased or selected for purchase on their behalf because they either paid more for the Formula Maker than it was worth or used a valuable gift opportunity to obtain a Formula Maker worth less than represented instead of another product of equivalent value.

**VII. Fraudulent Concealment and Equitable Estoppel**

65. Any applicable statutes of limitation were tolled by Baby Brezza's knowing concealment of the defect alleged herein. As described above, Baby Brezza continued to represent that the Formula Maker was safe and accurate while attributing reported dispensing inaccuracies to user error, improper cleaning or maintenance, and incorrect formula settings rather than disclosing that the machines could produce improper formula-to-water ratios even when used correctly.

66. Plaintiffs and Class Members exercised reasonable diligence but did not discover, and could not reasonably have discovered, the true nature and scope of the defect earlier. Baby Brezza possessed superior, non-public knowledge concerning the Formula Maker's design and performance, repeatedly denied that the machines were defective, and assured consumers that the machines operated accurately when properly used and maintained.

67. The defect was not readily apparent to consumers in the ordinary course of purchasing the Formula Maker. Although complaints concerning dispensing inaccuracies were publicly available, prospective purchasers were unlikely to encounter them when reviewing Baby Brezza's own product materials. For a substantial portion of the relevant period, Baby Brezza's website did not permit reviews to be sorted from lowest to highest rating, making the numerous one-star reviews reporting dispensing inaccuracies less likely to be seen by prospective purchasers.

68. One consumer explained, after posting about her defective Formula Maker on social media, that although she typically reads reviews before purchasing a product, "you can't

even read the 1-2 star reviews on their website… they have their filter feature designed a certain way that prevents you from being able to filter the bad reviews to the top… they only let you view the most positive reviews first."

69. As a result of Baby Brezza's fraudulent concealment and related misconduct, Baby Brezza is equitably estopped from asserting any statute-of-limitations defense that would otherwise apply to Plaintiffs' claims.

## VIII. Class Allegations

70. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiffs bring this action on behalf of themselves and all other similarly situated persons.

71. Plaintiffs seek to represent the following Class:

> All persons in the United States who purchased a new Formula Maker, or who selected a new Formula Maker for themselves or their household and caused or directed another person to purchase it for them, primarily for personal, family, or household use and not for resale.

72. Excluded from the Class are: Defendants; their parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which a Defendant has a controlling interest or that has a controlling interest in a Defendant; the judge assigned to this case and members of the judge's immediate family; any person who previously released the claims asserted in this action; all persons who timely and validly request exclusion from the Class; and Class Counsel.

73. The Class is ascertainable through objective criteria, including whether a person purchased a new Formula Maker, or selected a new Formula Maker for purchase on their behalf, primarily for personal, family, or household use and not for resale. Class membership may be established through records maintained by Defendants and third-party retailers, together with receipts, registry records, warranty registrations, and other evidence showing the purchase or selection of a Formula Maker for the Class Member's benefit.

74. Upon information and belief, the Class includes many thousands of persons, making joinder impracticable. Baby Brezza represented to The New York Times that approximately 500,000 units of the Formula Maker had been sold in the United States by 2020.

75. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and Class Members purchased Formula Maker models, or selected them for purchase on their behalf, containing the same alleged dispensing defect and propensity for dispensing inaccuracies, and suffered substantially similar economic injuries arising from Baby Brezza's common course of conduct concerning the products' safety, accuracy, and reliability. Plaintiffs' claims arise from the same practices and legal theories as those of other Class Members.

76. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with, and not antagonistic to, those of other Class Members. Plaintiffs are represented by counsel experienced in complex litigation and class actions.

77. There are questions of law and fact common to the members of the Class, including but not limited to the following:

a. Whether the Formula Maker models contain a common defect that can cause them to dispense inaccurate formula-to-water ratios;

b. Whether Baby Brezza knew or should have known of the alleged defect;

c. Whether Baby Brezza misrepresented or omitted material facts concerning the safety, accuracy, and reliability of the Formula Maker;

d. Whether Baby Brezza concealed the alleged defect by attributing reported dispensing inaccuracies to user error rather than disclosing the existence of the defect;

e. Whether Baby Brezza's representations and omissions were material to reasonable consumers;

f. Whether the Formula Maker was worth less than the price paid because of the alleged defect;

g. Whether Plaintiffs and Class Members suffered economic injury as a result of Baby Brezza's conduct; and

h. The appropriate measure of damages and other relief.

78. Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members. The claims of all Class Members arise from a common alleged product defect and Baby Brezza's common course of conduct in designing, marketing, selling, concealing, and failing to disclose material information concerning that defect. The existence of the defect, Baby Brezza's knowledge, the truth or falsity of its representations, the materiality of the omitted information, and economic injury may be established through common proof. Damages likewise may be calculated using a common damages methodology.

79. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The relatively modest amount of each Class Member's individual economic loss makes separate actions impracticable. Resolving the common issues in a single proceeding would conserve judicial resources and avoid inconsistent adjudications. Class treatment would permit Class Members to obtain relief without sacrificing procedural fairness.

## FIRST CAUSE OF ACTION
## FRAUD
### Asserted on Behalf of Plaintiffs and the Class

80. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 79 as if fully set forth herein.

81. Baby Brezza committed fraud through affirmative misrepresentations concerning the Formula Maker's performance and through concealment of a common defect in its formula-dispensing system. The Betesh Group participated in and furthered that fraudulent conduct

through its involvement in the marketing of the Formula Maker and its public responses to reports concerning dispensing inaccuracies. As alleged above, The Betesh Group's marketing team lead responded on Baby Brezza's behalf to reports that the Formula Maker produced diluted bottles, maintaining that the machines operated accurately when properly used and attributing reported failures to consumer error.

82. As alleged above, Baby Brezza made specific factual representations concerning the Formula Maker's accuracy, consistency, safety, and performance. Among other things, Baby Brezza represented that the Formula Maker produces a "perfectly mixed formula bottle every time," delivers formula to the "perfect consistency," is "more accurate" and "more consistent" than hand preparation, and is "completely safe to use." Baby Brezza further represented that it "conducts a meticulous testing process to ensure the perfect bottle is made every time."

83. These representations conveyed the same fundamental message: that the Formula Maker would safely and reliably dispense powdered formula and water in the proper proportions when properly set up, cleaned, and operated. That representation concerned the Formula Maker's essential function and was fundamental to consumers' decisions to purchase the machine or select it for purchase on their behalf.

84. Those representations were false or misleading because the Formula Maker contained a common defect that impaired its ability to dispense accurate amounts of powdered formula and often produced bottles with improper formula-to-water ratios even when used according to Baby Brezza's instructions.

85. The Formula Maker's undisclosed propensity to dispense inaccurate amounts of powdered formula existed at the time of sale and created a risk that the machine would prepare improperly concentrated bottles even when used correctly. That defect and associated risk made

the Formula Maker less safe, reliable, and valuable than Baby Brezza represented at the time of purchase.

86. Baby Brezza also omitted and concealed the existence and scope of the defect. Having made affirmative representations concerning the Formula Maker's accuracy, safety, consistency, and testing, Baby Brezza had a duty to disclose that the machine often dispenses improper formula-to-water ratios even when used correctly. Baby Brezza possessed superior, non-public knowledge concerning the machine's design, testing, performance, and complaint history, while purchasers could not discover the latent defect through ordinary inspection. Baby Brezza also knew that purchasers of a machine designed to prepare food for infants would necessarily assume that it could reliably perform its essential function of dispensing formula and water in safe proportions.

87. Baby Brezza knew or recklessly disregarded that its representations and omissions were false or misleading. As alleged above, Baby Brezza had received and responded to reports that the Formula Maker dispensed too little powdered formula and produced watery bottles even when consumers followed its instructions. The Betesh Group likewise had knowledge of reported dispensing inaccuracies through its involvement in Baby Brezza's marketing and its response to those reports on Baby Brezza's behalf. Despite that notice, Baby Brezza continued to make unqualified representations concerning the Formula Maker's safety and accuracy while Baby Brezza and The Betesh Group continued to attribute reported dispensing inaccuracies to consumer error.

88. Baby Brezza made these representations and concealed the defect intending that prospective purchasers would rely on its express assurances and on the reasonable assumption that a machine designed to prepare infant formula would reliably dispense formula and water in safe

proportions when used as directed. The Betesh Group participated in that course of conduct by promoting and defending the Formula Maker's accuracy and attributing reported dispensing failures to consumer misuse. Baby Brezza and The Betesh Group intended thereby to induce consumers to purchase the Formula Maker at prices reflecting that promised and expected performance.

89. Plaintiffs and Class Members reasonably and justifiably relied on the uniform and pervasive message conveyed by the Formula Maker's nature, marketing, and sale: that a machine designed to prepare infant formula would reliably dispense formula and water in safe proportions when used as directed. Baby Brezza repeated that message throughout its marketing in materially similar terms, making it fundamental to the product's identity and purchasers' decisions rather than dependent on any single advertisement or particular wording.

90. Plaintiffs and Class Members did not know that the Formula Maker contained the undisclosed dispensing defect. Had they known the truth, they would not have purchased the Formula Maker or selected it for purchase on their behalf. Alternatively, purchasing Plaintiffs and Class Members would have paid substantially less for it, while those who selected the Formula Maker for purchase on their behalf would have selected another product or otherwise preserved the value of that gift opportunity.

91. As a direct and proximate result of Defendants' fraud, Plaintiffs and Class Members suffered actual pecuniary loss because they either paid more for the Formula Maker than its actual value or used a valuable gift opportunity to obtain a Formula Maker worth less than represented instead of another product of equivalent value. The undisclosed defect and associated risk impaired the Formula Maker's safety, reliability, and value when sold.

**SECOND CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**Asserted on Behalf of Plaintiffs and the Class**

92. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 79 as if fully set forth herein.

93. Baby Brezza manufactured, marketed, distributed, and sold the Formula Maker, and Defendants made express warranties concerning its accuracy, consistency, safety, and performance to Plaintiffs and Class Members.

94. As alleged above, Baby Brezza expressly represented that the Formula Maker produces a "perfectly mixed formula bottle every time," prepares formula to the "perfect consistency," is "more accurate" and "more consistent" than hand preparation, and is "completely safe to use." Baby Brezza further represented that it "conducts a meticulous testing process to ensure the perfect bottle is made every time."

95. The Betesh Group likewise made express representations concerning the Formula Maker's accuracy and precision. Its marketing team lead stated that The Betesh Group had "carefully calibrated the machines to work with more than 2,000 types of baby formulas" and "regularly tested the devices for precision."[3]

96. These statements were specific and verifiable affirmations of fact, promises, and descriptions of the Formula Maker's performance. They warranted that the Formula Maker would safely and reliably dispense powdered formula and water in the proper proportions when properly set up, cleaned, and operated according to Baby Brezza's instructions.

97. Baby Brezza disseminated these warranties broadly and repeatedly through its website, product descriptions, advertising, social-media content, and other marketing materials for

[3] https://www.nytimes.com/2020/03/13/technology/baby-brezza-formula-pro-health-risks.html

the purpose of inducing consumers to purchase the Formula Maker. Baby Brezza intended and expected that these warranties would reach and influence ultimate purchasers, including those who purchased the Formula Maker through third-party retailers and those who selected the Formula Maker for purchase on their behalf, including through baby registries.

98. As alleged above, before purchasing the Formula Maker or selecting it for purchase on their behalf, each Plaintiff encountered Baby Brezza's marketing concerning the machine's accuracy, consistency, and reliability and was aware of Baby Brezza's promise that the machine would prepare properly proportioned bottles when used as directed.

99. Baby Brezza's warranties became part of the basis of the bargain. Baby Brezza consistently and pervasively marketed accurate and reliable formula preparation as the Formula Maker's defining performance characteristic, and Plaintiffs and Class Members purchased the machines at prices reflecting that warranted performance. The warranties did not depend on exposure to any single advertisement or particular wording because Baby Brezza repeated the same materially uniform promise throughout its marketing and product descriptions.

100. The Betesh Group's own public representations concerning the machines' calibration, testing, and precision further confirm that accuracy and reliable formula preparation were affirmative performance characteristics promoted by Defendants.

101. Defendants breached these express warranties because the Formula Maker did not conform to the warranted performance. Even when properly set up, cleaned, and operated according to Baby Brezza's instructions, the Formula Maker had a common, undisclosed propensity to dispense inaccurate amounts of powdered formula and could produce bottles with improper formula-to-water ratios.

102. That propensity and associated risk existed at the time of sale and made the Formula Maker less safe, reliable, and valuable than warranted. A machine that cannot reliably assure the proper formula-to-water ratio does not conform to Baby Brezza's warranties that it produces a "perfectly mixed formula bottle every time," delivers the "perfect consistency," and is more accurate and consistent than hand preparation. Nor does such a machine conform to The Betesh Group's representations that the machines were carefully calibrated and regularly tested for precision.

103. Defendants' breach did not depend on whether a purchaser immediately detected an obvious dispensing error. Plaintiffs and Class Members purchased machines, or selected them for purchase on their behalf, based on warranties that the machines would prepare infant formula accurately and reliably, but instead received machines with an undisclosed propensity to prepare improperly concentrated bottles even when used correctly.

104. Defendants made the express warranties for the purpose of influencing ultimate consumers' decisions to purchase the Formula Maker or select it for purchase on their behalf. The warranties are therefore enforceable against Defendants notwithstanding that Plaintiffs and some Class Members acquired their Formula Makers through third-party retailers or through purchases made on their behalf.

105. As alleged above, after discovering the breach, Plaintiff Horowitz notified Baby Brezza that the Formula Maker dispensed too little powdered formula. Plaintiff provided this notice within a reasonable time after discovering, or reasonably being able to discover, the breach.

106. Had Plaintiffs and Class Members known that the Formula Maker did not conform to the express warranties concerning its accuracy, consistency, safety, and performance, they would not have purchased it or selected it for purchase on their behalf. Alternatively, purchasing

Plaintiffs and Class Members would have paid substantially less for it, while those who selected the Formula Maker for purchase on their behalf would have selected a different product or otherwise preserved the value of that gift opportunity.

107. As a direct and proximate result of Defendants' breaches, Plaintiffs and Class Members suffered economic loss because they either paid more for the Formula Maker than its actual value or used a valuable gift opportunity to obtain a Formula Maker worth less than warranted instead of another product of equivalent value. The undisclosed propensity to dispense inaccurate amounts of powdered formula, and the resulting risk of improperly concentrated bottles, impaired the Formula Maker's safety, reliability, and value when delivered.

108. Plaintiffs and Class Members are entitled to recover the difference between the value of the Formula Maker as warranted and its actual value when delivered, together with all other damages and relief available under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and grant the following relief:

1. An order certifying this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;
2. A judgment awarding Plaintiffs and members of the Class all damages and other monetary relief available under applicable law, in an amount to be determined at trial, together with pre-judgment and post-judgment interest as permitted by law;
3. An award of reasonable attorneys' fees, costs of suit, and expenses as permitted by applicable law;
4. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury in this action of all issues so triable.

Dated: September 1, 2026
New York, New York

Respectfully submitted,

**BRESSLER LLP**

By: /s/ *Jason Bressler*

Jason Bressler
Kenneth L Bressler
175 Varick Street, Suite 410
New York, NY 10014
Tel.: (212) 444-2388
jason.bressler@bresslerllp.com
ken.bressler@bresslerllp.com

*Attorneys for Plaintiffs*